IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES CRISTOFOLETTI, CAROLINE HATCHETT, ANTHONY LATUJA, and DEAN NICOSIA, individually and on behalf of all those similarly situated,<br><br>        Plaintiffs,<br>    v.<br><br>TRANSFORM SR BRANDS, LLC,<br><br>        Defendant. | Case No. 1:23-cv-1318 |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Plaintiff brings this class action on behalf of consumers who purchased a Class Refrigerator—any Kenmore branded refrigerators that contained a common defective component called a "linear compressor" that was sold in the United States within ten years from the date of this filing.

2.      A compressor is often referred to as the "heart" of a refrigerator because its function is to circulate refrigerant throughout the system. A refrigerator cannot work without a functioning compressor, although a well-maintained, properly functioning refrigerator compressor should function for at least ten years. Indeed, upon information and belief, most of the Class Refrigerators came with an express Sears warranty that the compressors would function for 10 years.

3.      Defendant Transform SR Brands, LLC ("Transformco") owns Sears, Roebuck & Co. ("Sears") and the Kenmore brand. Transformco and its predecessor distributed, marketed, advertised, warranted, sold, and serviced the Class Refrigerators. Transformco took express

assignment and assumed all liabilities arising from warranties for Class Refrigerators sold by its corporate predecessor before February 11, 2019.

4.      Transformco and its corporate predecessor have been aware of the linear compressor defect in the Class Refrigerators for several years. Transformco and its corporate predecessor learned of this defect through reported failures by consumers, a large volume of warranty claims, and several lawsuits.

5.      Despite its knowledge of the linear compressor defect and its propensity to cause the Class Refrigerators to fail relatively shortly after purchase, Transformco took no steps to disclose the defect to consumers and instead continued to misleadingly advertise the Class Refrigerators as reliable products.

6.      The Class Refrigerators pose unreasonable risks of property damage and personal injury via food-borne illnesses during normal use.

7.      Plaintiffs seek money damages. A refrigerator that fails to keep food at a safe temperature has no value because it cannot be used safely. In the alternative, the Class Refrigerators have significantly less value than promised at the point of sale (i.e., a refrigerator that is prone to storing food at an improper temperature is less valuable than one that can store food at a safe temperature).

8.      The below allegations are based upon personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## THE PARTIES

I.      **PLAINTIFFS**

     **A.      James Cristofoletti**

9.      Plaintiff James Cristofoletti is a resident of Texas.

10.     Plaintiff Cristofoletti purchased his Class Refrigerator (model number: 75049) at a Sears department store in San Antonio, Texas in the second half of 2018.

**B.     Caroline Hatchett**

11.     Plaintiff Caroline Hatchett is a resident of California.

12.     Plaintiff Hatchett purchased her Class Refrigerator (model number: 73055) for delivery in the spring of 2016 from a Sears store in San Diego, California.

**C.     Anthony Latuja**

13.     Plaintiff Anthony Latuja is a resident of New Jersey.

14.     Plaintiff Latuja purchased a Kenmore refrigerator (model number: 73105) on February 11, 2019 from a Sears store in Rockaway, New Jersey.

**D.     Dean Nicosia**

15.     Plaintiff Dean Nicosia is a resident of North Carolina.

16.     Nicosia purchased a Kenmore Elite refrigerator (model number: 74022) on June 27, 2019 from a Sears store in Fayetteville, NC.

**II.     DEFENDANT**

17.     Defendant Transform SR Brands, LLC ("Transformco") is an Illinois corporation headquartered in Hoffman Estates, IL.

18.     Transformco owns Sears, Roebuck & Co. ("Sears") and the Kenmore brand.

19.     Through Sears and Kenmore, Transformco markets, advertises, distributes, sells, warrants, and services the Class Refrigerators in and from this jurisdiction.

20.     Transformco is and has at all relevant times been in the business of marketing, advertising, distributing, selling, warranting, and servicing the Class Refrigerators described herein throughout the United States and in this jurisdiction. Transformco purposely directs its conduct toward this District and engages in a continuous course of business in this District,

including by selling thousands of refrigerators and other consumer goods in this District every year.

21.     On February 11, 2019, Transformco's parent company purchased the assets of Sears Holding Corporation. Under this asset purchase agreement, Transformco's parent company assumed all liabilities for warranties and protection agreements or other services contracts (other than warranties relating to Intellectual Property) for the goods and services of Sellers sold or performed prior to February 11, 2019. Upon information and belief, Transformco is the subsidiary that then assumed warranty liabilities relating to the Class Refrigerators.

## JURISDICTION AND VENUE

22.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed Class is a citizen of a state different from that of Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

23.     The United States District Court for the Northern District of Illinois has jurisdiction over Defendant because it resides and transacts business in Illinois, has purposely availed itself of the laws of Illinois, and because many of the specific events giving rise to this action occurred in Illinois.

24.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' and the Classes' claims occurred in this District. Defendant has marketed, advertised, and sold the Class Refrigerators, and otherwise conducted extensive business, within this District. In addition, Defendant's principal place of business is in Illinois.

## GENERAL FACTUAL ALLEGATIONS

25.     A crucial component of any modern American household, refrigerators are found in the vast majority of homes. By cooling food and medicines, like insulin, to safe temperatures, refrigerators reduce the risk of illness.

26.     According to most manufacturers, properly functioning refrigerators should have an average lifespan of ten years.[1]

## I.     THE CLASS REFRIGERATORS CONTAIN A DEFECTIVE LINEAR COMPRESSOR

27.     Every refrigerator has a compressor. It is a critical component to the operation of a refrigerator because it moves or pumps refrigerant—a cooling substance that changes from liquid to gas—through the refrigerator's system. The refrigerator's temperature sensors trigger the compressor to start and stop the cooling process. Once the temperature rises above a set level, the compressor starts by drawing cold refrigerant gas from the refrigerator's evaporator. The refrigerant enters the compressor through an intake valve and the compressor then puts pressure on the refrigerant gas (compressing it) which raises the refrigerant's temperature and pushes the gas through its discharge valve, then through the coils on the outside of the refrigerator. When the hot gas in the coils meets the cooler air temperature in the room, it becomes a liquid. The refrigerant then passes through an expansion valve, which decreases its pressure, and continues to flow through the coils inside the freezer and the refrigerator. As the cold liquid refrigerant moves through the coils, it cools the air in the refrigerator by absorbing the heat from the surrounding air. The refrigerant then evaporates into gas, flows back into the compressor, and the process repeats.

---

[1] Daniel Wroclawski, *How to Make Your Refrigerator Last Longer*, CONSUMER REPORTS, (June 20, 2019), https://www.consumerreports.org/refrigerators/how-to-make-your-refrigerator-last-longer-a3675077642/.

28.     The defective linear compressors at issue in this lawsuit were designed and made by non-party LG Electronics. LG Electronics first introduced its proprietary linear compressor technology in 2001. A linear compressor is distinct from other compressors because the piston used to compress gas moves along a linear track. LG's linear compressors are defective because they often fail well before the industry standard (and typical warranty period) of 10 years from normal usage.

29.     Although discovery will confirm all the root causes of the defect in LG's linear compressors, two component parts of the linear compressor appear to contribute to its routine failure before ten years.  First, the tubing of the compressor evaporator is prone to corrosion and pitting from ordinary usage, whereby pinholes develop in the tubing. The pinholes cause leakage and allow refrigerant to enter the tubing, which causes the refrigerant to generate excess pressure as it flows from the evaporator to the condenser. The excess pressure puts additional stress on the compressor, which causes the compressor to fail. Second, the defective compressors also have a discharge valve (the valve that regulates the flow of the refrigerant from the compressor) that is weak and prone to failure from ordinary usage.

30.     When the defective linear compressor fails, the Class Refrigerators stop cooling and run above the temperature required to store food and other consumable goods safely. This causes food stored in the Class Refrigerators to spoil, posing a safety risk to consumers who might become ill from ingesting spoiled goods.

31.     LG Electronics and its US subsidiary distribute a replacement compressor for the Class Refrigerators. Those replacements routinely fail before the industry standard of 10 years.

32.     The defective linear compressor is found in all Class Refrigerators. Based on publicly available information regarding the defective linear compressors, at least the following

Kenmore refrigerator models appear to have the defective linear compressor: 72372, 72373, 72379, 72482, 72483, 72489, 73055, 73105, 74012, 74012, 74013, 74013, 74015, 74019, 74022, 74023, 74023, 74024, 74025, 74029, 74032, 74033, 74039, 74042, 74043, 74049, 74053, 74063, 75049, 79983, and 79993. Upon information and belief, there are many other Kenmore refrigerator models with the defective linear compressor. Discovery from Transformco will identify the complete universe of these models.

33. The Class Refrigerators range in price from approximately $2,000 to $3,700.

34. The Class Refrigerators come with a one-year express manufacturer's warranty for the unit. Upon information and belief, most of the Class Refrigerators also come with a ten-year express manufacturer's warranty for the linear compressor.

## II. TRANSFORMCO OMITTED INFORMATION ABOUT THE CLASS REFRIGERATORS' DEFECT

### A. Transformco's Knowledge of the Defect

35. For several years, Transformco and its agents and predecessor have known that the Class Refrigerators were defective as a result of the defective linear compressors, which caused the Class Refrigerators to stop cooling properly and run above the temperature required to store food safely.

36. Transformco and its predecessor learned of the linear compressor defect through several lawsuits about it. For example, several consumers brought a putative class action concerning refrigerators with the linear compressor defect in *Bentley v. LG Electronics U.S.A., Inc.*, D.N.J. No. 2:19-cv-13554-MCA-MAH. LG USA and *Sosenko v. LG Elecs. U.S.A., Inc.*, C.D. Cal. No. 8:19-cv-610-JLS-ADS. Several of the consumer plaintiffs in these cases had bought Kenmore refrigerators. When the cases were consolidated and settled, however, the settlement class was defined to exclude all Kenmore-branded Class Refrigerators.

37.     Moreover, well prior to the filing of these lawsuits, employees of Sears' warranty department received complaints from U.S. customers and assigned authorized technicians to visit the residences of complaining consumers and analyze the Class Refrigerators and other refrigerators with the defective linear compressor. Upon information and belief, these authorized technicians have been reporting large volumes of Class Refrigerator failures caused by the linear compressor defect. Indeed, several of the Transformco technicians that inspected Plaintiffs' Class Refrigerators after their defective compressors stopped working informed the Plaintiffs that the problem is well-known among the company's authorized technicians.

38.     Hundreds of publicly available accounts of Class Refrigerator failures caused by the linear compressor defect further notified Transformco of the defect in the Class Refrigerators. Upon information and belief, Transformco and its predecessor was aware of these public complaints, including through employees of its corporate predecessor that continued work for Transformco after the February 2019 asset purchase.

a.     A September 25, 2017 consumer complaint states: "Kenmore Elite model# 795.74025.411[.] My fridge is less than two years old and just stopped working. The service tech came out and didn't even look at it and said right away that the compressor is bad. I asked how did he know that and he said they are being replaced in the unit an alarming rate. Now they cannot locate a compressor to repair the fridge. I've lost total confidence in this model refrigerator and not sure what to do, this was an expensive item and I think Sears needs to replace them with a different model that is not experiencing these problems."

b.     A September 29, 2017 consumer complaint states: "Sears Kenmore elite fridge by LG[.] Bought new fridge model 795 74029 , less that 2 years old , sears repair

comes out and says , compressor is bad a debris is plugging the pencil lead thin lines. He can't blow it out and says fridge is not fixable. So I spent 200 dollars a month keeping my lettuce cold. He said buy Whirlpool. 531.00 minimum to try and fix it up to 1000.00. And only 99 day guarantee! It cost me 100.00 to find this out. Can you say rip off! After 4 hours of calls to LG and Sears no help. I would be interested in hearing about any class action suits, it appears one is justified."

       c.     A November 1, 2017 consumer complaint states: "Kenmore Elite Refrigerator – NIGHTMARE[.] I purchased a Kenmore Elite Refrigerator Model 74023 (with LG compressor) in June 2015. Fast forward two years later, October 17, 2017 found the food in my fridge was warm and my all freezer food was defrosted. All of the horror stories on this site are true. Most have happened to me in the last few weeks. Multiple calls to Kenmore and Sears; multiple technicians have come out; parts on backorder with no ETA; have taken multiple days off of work to wait around for the technicians to show up; telling Sears you don't want to purchase any other service plan they try to sell you every time you call them because they are desperate to make money. I'm being told that to next available day for a technician to come out is Nov. 14th - yet the parts have not arrived and they cannot tell me when the parts will be available. Neither Sears nor Kenmore care about their customers!!! I purchased four Kenmore appliances from Sears at the same time when we remodeled our kitchen in 2015. This is not what I expected from Kenmore or Sears. Do not purchase a Kenmore, especially from Sears. I wish some someone (a smart lawyer, the state attorney general, Superman) did something about this - and at least get Sears or Kenmore to reimburse customers for multiple bags of ice purchased a week to keep the little amount of food you can in a small

ice chest, all the "going-out to eat" money that has been spent because we cannot provide a meal for our families; and all the days off of work we have had to take. SOMEONE HELP US!!"

       d.      A February 20, 2018 consumer complaint states: "Kenmore Elite Refrigerator[.] Worst refrigerator ever!! Thought I was buying a real honest to goodness Kenmore product. Good old reliable Sears. That's a joke. It's an LG product with a Kenmore sticker on it. Purchased in 2015. Have had nothing but problems. Had a technician out at least 6 times for various problems. Warranty expires this June 2018. Wasn't cooling very well on this service call. Technician checks it out today, 2/19/18. Needs a new compressor, electrical board and filter dryer. Might be a month before I get the parts. Thank goodness I called before the warranty expired. Guess next time something fails my warranty will be expired and I'll just take it to the garbage dump. Decided to Google on this refrigerator and read lots of reviews, just today, on how many consumers have had problems with the Kenmore Elite compressor going bad and other multiple problems. As a matter of fact, the technician was going to his next call with the same exact model refrigerator I have and the same cooling problem. Technician stated he had replaced a lot of compressors in these refrigerators. LG needs to ante up and be responsible for all repairs and labor for their defective compressors, regardless of warranty or not. I will never make another purchase without checking out what consumers have to say about a product. Oh, and by the way, I think Consumer Reports gave this refrigerator high ratings back when I purchased it, as I am a subscriber to their magazine. Well, not good enough. Let one of them actually purchase one and put it in their house and lets see what happens in a month, 6 months or 1 year and see how they

feel about the refrigerator then!!! Just wish me luck that it will last a while longer after repairs. And maybe I'll have enough time to save up money to purchase something else."

e. A July 16, 2018 consumer complaint states: "Sears Kenmore Elite Refrigator[.] I purchased a Kenmore Elite refrigerator in November of 2015. The compressor went out in October of 2017. We were left with over $300 worth of spoiled food that we were never compensated for, even though the extended warranty claims to cover lost food. It is now July 2018 and the refrigerator has gone out again! It's been 9 days since we called to put in a claim to have the refrigerator repaired and they have not sent out a tech who can diagnose the issue. We are now dealing with another refrigerator full of spoiled food! In talking with the tech who came in 2017, he said that the Kenmore Elite refrigerators have had many issues with the compressors failing and that Kenmore and LG are aware of it! I've never paid as much for a refrigerator as I did for this one and I've never had any issues with any other refrigerator that I have ever owned but this one! THIS THING IS A LEMON! Kenmore/LG are aware of it and they need to replace these units!"

f. A December 19, 2018 consumer complaint states: "I bought a new Kenmore fridge April 2015 that cost approx. $1600 (before tax), and in December 2018 it stopped working with no warning. I noticed freezer began to defrost and the fridge was not cooling. I called Sears repair and it took them 2 weeks to come out. They came today and the tech said it was the compressor and that it will be $980 to fix and there is really only a 70% chance that it will be fixed... It will never be the same and probably not worth fixing. Needless to say I am so upset, we lost all our food. It's only been 3 years since I

bought Kenmore fridge, I shouldn't be having this problem AT ALL!!! It shouldn't cost me anything."

      g.    An April 16, 2019 consumer complaint states: "We purchased a Kenmore Elite Grab and Go refrigerator from Sears in April of 2015. Last week our ice maker stopped working, and then a few days later the frig and freezer both stopped working. We contacted sears and was told that our warranty had expired. Sears scheduled a repair man to come out the following week, and offered us a warranty plan stating that we could pay $49 a month, with a $99 deductible, with parts covered and labor for up to $500. We accepted the plan. Even then because Sears does not do repairs on the weekend, therefore we had to spend $160 on a small freezer to salvage as much of our frozen food as possible. The following Monday we waited for the repair man for most of the day. Our appointment time was between 1pm and 5pm. The Sears repair man did not show up until around 6pm. He then informed us that our compressor was bad and that it would take a week for the repair work to be done. He then told us that we were expected to pay $99 for the visit, plus $146 dollars because the repair job exceeded the $500 limit. This information was slightly different from what we had been told by the person who sold us the warranty plan. When we called back a different representative told us that Sears only covers up to $500 for the total repair job. When I complained about the misinformation the warranty person on the phone offered me $500 towards the purchase of a new refrigerator from Sears. Is he kidding. Our frig is only 4 years old! To add insult to injury, the repair person told us 'Your compressor is an LG compressor and these things are dropping like flies'. When I questioned him about the brand of the replacement part, he informed us that he would be replacing the compressor with another LG compressor. I

have been on the phone with Sears several times the past few days complaining about my refrigerator not working. Twice the warranty person on the phone attempted to schedule a walk through to sell us a new AC unit. Yet its been a week and our refrigerator still does not work. In addition to a small freezer we had to go out last night to purchase a small refrigerator. I called the corporate office this morning and was sent back to the same customer service number. Its frustrating because the English of the people we spoke with is not very good. The agents sound very rehearsed and appear to experts at not solving your problems."

h.      A December 13, 2019 consumer complaint states: "I purchased the Kenmore Elite refrigerator hoping that it was as durable as the one I had in the past. I was wrong and sadly disappointed in this product. The compressor went out in less than 2 years and the replacement cost is ridiculous. The compressor is still under warranty but the cost to have Sears repair it is absurd. They no longer honor their products and charge the consumer an exorbitant fee for the service call and then charge labor fees for repairing their defective appliance. Sears was at one time selling a product that was well worth purchasing but that is no longer true. Buyers beware! Research your appliances and do not buy from Sears or you may be in the same position I am in now. I lost approximately $200.00 in food and I am stuck with the service fees as well. Never again will I shop at Sears!!"

i.      A December 31, 2019 consumer complaint states: "Kenmore Elite Refrigerator Made by LG[.] Bought a Kenmore Elite Refrigerator approximately 2 years ago, Model: 795.74025.411. Paid over $3,000.00 for the refrigerator and now 2 years later the compressor is going bad. Repairman said this was a common problem with LG

refrigerators and Kenmore Refrigerators made by LG. Estimated repair cost over $1,000.00!"

j.      A June 5, 2020 consumer complaint states: "Just like all the stories before, we have a Kenmore Elite (made by LG) model 795.51863.611, purchase in 5/2018 and now the compressor is bad. I had a repair man out and I he said that even though the part will be covered (10 yr part warranty) the labor will not be and on average will be around $750. How is it justifiable to pay that amount of $$ for a 2 year old refrigerator but the other option is to trash it, so sad and pathetic. I will never buy anything from Sears ever again and I will be sure to tell anyone who listens what a piece of garbage the appliances are and how horrible Sears customer service is, they have been no help! This isn't right and I hoping they get sued big time."

k.      An October 8, 2020 consumer complaint states: "I purchased a brand new Kenmore refrigerator 8/2018 and the compressor blew 9/27/2020. I called to set an appointment date for service and they failed to show. My appointments are now continuing to be rescheduled later and later in the month. This has changed every other day via text or automated calls from 10/6, to 10/7 to 10/19, to now 10/20! I have received no explanation as to why my appointments keep getting changed and no acknowledgment regarding a service request for a refrigerator which is an ESSENTIAL household item."

l.      A November 14, 2021 consumer complaint states: "We purchased a Kenmore Elite refrigerator and it stopped cooling and we called Sears/Kenmore and they sent multiple people on 4 different occasions to check it out and all said that it was the compressor and we still have warranty on it. To add insult to injury one of their affiliates by name Intelfix paid $100 deductible to them and still they have not fixed my appliance

-14-

nor replace and whenever we call they will give us a run around. I can't believe we have all of our appliances from the scam of a company called Sears/Kenmore."

m. A September 26, 2022 consumer complaint states: "We bought our LG refrigerator with linear compressor on September 5, 2017 and bought a 5 year protection plan from Home depot. The fridge is no longer cooling as of September 13, 2022. I called LG and they referred me to home depot and home depot says there's nothing they can do since my warranty has expired. Do any of you out there have a similar issue with LG compressors going bad after only 5 years? I have an old Maytag refrigerator that I am using as a spare in the back yard that is almost 17 years old. I will never buy an LG/Samsung appliances again. Or from home depot for that matter."

39. Transformco would also have known about the high rate of failures in the Class Refrigerators and linear compressors because it received warranty claims from many affected consumers. Moreover, when Transformco closed on the asset purchase agreement it would have had access to the records of past warranty claims on its corporate predecessor.

**2.      Transformco's Concealment of the Defect**

40. Despite knowing about the linear compressor defect, Transformco continued advertising, warranting, distributing, and selling the defective linear compressor and many of the Class Refrigerators without (a) warning consumers of the real possibility that the Class Refrigerators may be unable to store food at a safe temperature; (b) recalling the defective Class Refrigerators; (c) offering to repair the defective Class Refrigerators free of charge; and/or (d) refunding consumers any or all of the purchase price they paid for their Class Refrigerators.

41. When Plaintiffs purchased their Class Refrigerators, Transformco or its predecessor failed to disclose to them that their Class Refrigerator contained a defective compressor that was likely to fail well before the industry standard of at least ten years, thereby

causing his Class Refrigerator to run above the temperature required to safely store food and medicine.

42.     Transformco had a duty to disclose the above-described defect to Plaintiffs and the proposed Class Members, but failed to do so.

43.     Transformco's duty to disclose arose for several independent reasons. First, Transformco had superior knowledge of the defect for the reasons described above.

44.     Second, the linear compressor defect poses a material safety risk that always requires disclosure, because it threatens to deprive consumers of necessary food and increases the risk that consumers will ingest spoiled or otherwise unsafe food, which can cause illness.

45.     Third, Transformco's practice of disseminating misleading half-truths about the linear compressor and Class Refrigerators triggered a duty to disclose. Some representative examples of these misleading half-truths are collected in the subparagraphs below.

    a.     "Kenmore Elite 74022 French Door Bottom-Freezer Fridge—Keep Food Fresh and Accessible."

    b.     "From bags of fresh groceries to tons of Thanksgiving leftovers, the Kenmore Elite 74022 29.8 cu. ft. French Door Fridge has the flexible and spacious capacity you need. Take advantage of the full-width pantry drawer to keep snacks, treats or party trays chilled and ready to eat."

    c.     "Fresher Food Longer GeniusCool technology uses Digital Temperature Control, Multi Air Flow and electronic sensors to keep all of your foods fresh. The linear compressor adjusts to quick temperature changes and a CleanFlow Air filter circulate air through a charcoal filter to eliminate odors and help maintain freshness."

46. These exemplar statements about Class Refrigerators by Transformco are misleading half-truths because they misleadingly suggest that the Class Refrigerators and linear compressors are capable of properly cooling food. In truth, the Class Refrigerators and linear compressors routinely fail and stop cooling food properly well before the industry standard lifetime of 10 years. By affirmatively stating that the Class Refrigerators were capable of properly cooling food, Transformco triggered a duty to disclose the full truth about the linear compressor defect.

47. Despite these duties to disclose, neither Transformco nor its predecessor disclosed to Plaintiffs or other Class Members at the point of sale when they purchased their respective Class Refrigerators. Nor have they disclosed the defect to Plaintiffs or Class Members since the time of purchase.

**B.**     **Warranties**

**1.**     **A merchantable refrigerator compressor has a lifetime of ten years**

48. Transformco and its predecessor are companies that deal in refrigerators and compressors, and are therefore merchants within the meaning of the Uniform Commercial Code.

49. Transformco and its predecessor marketed and advertised that the Class Refrigerators were of merchantable quality and fit for their intended purpose.

50. Because the industry standard lifetime of refrigerators is at least ten years, a refrigerator is not fit for its ordinary use if it has a compressor that routinely fails well before the ten-year mark. The ten-year duration of Transformco's warranty for its linear compressors confirms this industry standard. The implied warranty of merchantability therefore required the Class Refrigerators to meet this industry standard of ordinary use.

**2.**    **Boilerplate in user manuals does not limit the implied the implied warranty of mercantibility to less than ten years.**

51.    For several years, Transformco and its corporate predecessor have had a deceptive and unfair practice of not disclosing at the point of sale a set of written disclaimers, limitations, and exclusions to consumers that Transformco claims will limit its warranty obligations liabilities. Instead, Transformco and its corporate predecessor buries these purported limitations in a lengthy "use and care" manual that comes when the refrigerator is delivered, well after the purchase has occurred. The cover page of the manual does not state that any contractual terms are contained inside, and the vast majority of the information in the manual does not relate to contractual terms at all. Instead, the manual largely concerns technical information about the refrigerator. Consumers are therefore not given reasonable notice of the purported written disclaimers, limitations, and exclusions of Transformco's warranty obligations.

52.    The written disclaimers, limitations, and exclusions contained in Transformco's "use and care" manuals for the Class Refrigerators are not enforceable for several independent reasons.

a.    First, they are not part of the agreement formed at the point of purchase, and are not reasonably presented to the consumer for acceptance. The page in the "use and care" manual with the relevant language – if seen by consumers at all – provides no instructions on how a consumer can opt out of or negotiate the warranties, and the refrigerator will typically have been installed by the time the consumer has a reasonable opportunity to read the manual.  For these reasons, Transformco never actually reaches an agreement with consumers concerning its purported warranty limitations.

b.    Independent of this failing, any effort to limit the duration of implied warranties for the Class Refrigerators to one year in duration is separately unenforceable

because that lifetime is not a "reasonable duration" for a refrigerator under 15 U.S.C.

§2308(b), given the industry standard of at least a ten-year lifetime for refrigerators and

compressors.

       c.     Furthermore, any effort to limit the duration of implied warranties for the

Class Refrigerators to one year in duration is separately unenforceable because

Transformco did not prominently display that limitation as required by 15 U.S.C.

§2308(b) and instead buried its warranty limitations in a manual provided after the point

of sale.

       d.     Moreover, under federal law, any manufacturer or seller making a product

available to customers, whether directly or indirectly, cannot disclaim implied warranties

of merchantability and fitness for a particular purpose where that manufacturer has made

an express warranty. Accordingly, such implied warranties apply to Class Refrigerators

sold to Plaintiffs and all Class Members. Any language limiting implied warranties to a

duration that is shorter than the longest of either the express warranty applicable to the

linear compressor or the express warranty applicable to the Class Refrigerator is

unenforceable under 15 U.S.C. §2308(b).

       e.     Finally, any effort to limit the duration of, or remedies under, implied

warranties for the Class Refrigerators is unenforceable because it is unconscionable for

Transformco to seek to impose such limitations when it knew the defective linear

compressors in Class Refrigerators routinely fail well before the industry standard of ten

years and because, as explained above, the purported warranty limitations were buried in

a user manual separate from the other important contract terms that were shown to the

consumer at the point of sale. Contract terms shown to consumers at the point of sale include terms like the purchase price and delivery date.

III.    **PLAINTIFFS' CLASS REFRIGERATORS**

      A.    **Plaintiff Cristofoletti's Class Refrigerators**

53.    Plaintiff Cristofoletti purchased his Class Refrigerator (model number: 75049) at a Sears department store in San Antonio, Texas in the second half of 2018. The refrigerator cost Mr. Cristofoletti approximately $2500.

54.    The "use and care" manual provided to Plaintiff Cristofoletti with his Class Refrigerator includes a one year express warranty for the Class Refrigerator and a ten year warranty for the linear compressor.

55.    None of the information presented by Transformco and its salesman to Mr. Cristofoletti at the point of sale disclosed that the linear compressor in Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Mr. Cristofoletti to identify the defect himself.

56.    Mr. Cristofoletti used the Class Refrigerator solely for its intended purpose as a personal home appliance.

57.    Within approximately eight months, the original Class Refrigerator purchased by Mr. Cristofoletti stopped cooling due to its defective linear compressor. In response to Mr. Cristofoletti's complaints, Transformco sent a technician to analyze the refrigerator. The technician stated that the linear compressor had failed, and that it was a common issue in his experience. When the technician explained that the purported remedy for the failure would be to install a new linear compressor with the same design, Mr. Cristofoletti complained to

Transformco and demanded a new refrigerator of the same model, which Transformco provided. Mr. Cristofoletti paid the technician for his diagnosis, which cost approximately $190.

58.     The replacement refrigerator had the same defective linear compressor, however, and again stopped cooling prematurely in January 2023. The refrigerator no longer performs its intended function of cooling perishables.

59.     As a result of the two failures Mr. Cristofoletti lost well over $500 in perishables as a result of the two failures of his Class Refrigerators.

**B.     Caroline Hatchett's Class Refrigerator**

60.     Plaintiff Hatchett purchased a Kenmore refrigerator (Model Number: 73055) for delivery in the spring of 2016 from a Sears store in Chula Vista, California for approximately $2000.

61.     The "use and care" manual provided to Plaintiff Hatchett with her Class Refrigerator includes a one year express warranty for the Class Refrigerator.

62.     None of the information presented by Transformco and its salesman to Ms. Hatchett at the point of sale disclosed that the linear compressor in her Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Ms. Hatchett to identify the defect herself.

63.     Ms. Hatchett used the Class Refrigerator solely for its intended purpose as a personal home appliance.

64.     On January 23, 2023, the linear compressor in Plaintiff Hatchett's refrigerator failed, and the freezer stopped working.

65.     On or around January 27, 2023, Ms. Hatchett called the Sears warranty department to log a complaint, and Sears sent a technician who noted that the linear compressor

had failed. He provided Ms. Hatchett with a quote that repairing the refrigerator would cost over $1000.

66.     Ms. Hatchett estimates that she lost approximately $300 worth of food as a result of the failure of her Class Refrigerator.

C.     **Plaintiff Latuja's Class Refrigerator**

67.     Plaintiff Latuja purchased a Kenmore refrigerator (model number: 73105) on February 11, 2019 from a Sears store in Rockaway, New Jersey. The refrigerator cost Mr. Latuja $2052.

68.     The "use and care" manual provided to Plaintiff Latuja with his Class Refrigerator includes a one year express warranty for the Class Refrigerator.

69.     None of the information presented by Transformco and its salesman to Mr. Latuja at the point of sale disclosed that the linear compressor in Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Mr. Latuja to identify the defect himself.

70.     Mr. Latuja used the Class Refrigerator solely for its intended purpose as a personal home appliance.

71.     On April 8, 2022, the linear compressor in Plaintiff Latuja's refrigerator failed.

72.     Plaintiff Latuja arranged for a Transformco technician to inspect the refrigerator shortly thereafter. The technician confirmed that the compressor had failed, that these types of failures were routine, that replacing the compressor would cost over $1200 (more than half the cost of the refrigerator), and that a replacement compressor likely would have a similarly short lifetime as the failed one. This service visit cost Mr. Latuja $155.

73.     Mr. Latuja declined to have the compressor replaced in light of these prohibitively high costs.

74.     Since Mr. Latuja's Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, he has been unable to use the Class Refrigerator for its intended purpose.

**D.     Plaintiff Nicosia's Class Refrigerator**

75.     Plaintiff Nicosia purchased a Kenmore Elite Refrigerator (model number: 74022) on June 27, 2019 from a Sears store in Fayetteville, North Carolina. Because this refrigerator had a defective linear compressor made or designed by LG Korea, it was a Class Refrigerator.

76.     Plaintiff Nicosia used a credit of $1,810.10 from the purchase of a prior defective Sears refrigerator to purchase the Class Refrigerator. This credit was fungible and could have been put toward any other refrigerator available at Sears.

77.     The "use and care" manual provided to Plaintiff Nicosia with his Class Refrigerator includes a one year express warranty for the Class Refrigerator and a ten year warranty for the linear compressor.

78.     None of the information presented by Transformco and its salesman to Mr. Nicosia at the point of sale disclosed that the linear compressor in Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Nicosia to identify the defect himself.

79.     Nicosia used the Class Refrigerator solely for its intended purpose as a personal home appliance.

80.     On or around late Summer 2022, the linear compressor in Nicosia's Class Refrigerator broke, causing the Class Refrigerator to run above the temperature required to store food and other consumable goods safely.

81.     On or around Fall 2022, a Transformco technician went to Nicosia's home to inspect the Class Refrigerator. The technician diagnosed the problem as the compressor. The technician told Nicosia that it was not worth fixing the compressor because it would be expensive to do so and the compressor would likely break again.

82.     On November 15, 2022, another Transformco technician went to Nicosia's home and diagnosed the problem as the failed linear compressor. The technician confirmed that he has seen this problem in hundreds of Kenmore and LG refrigerators that have linear compressors. The technician confirmed that LG uses a universal replacement linear compressor for all Kenmore and LG refrigerators but that those replacements routinely fail relatively shortly after replacement due to the same problems. The service appointment to diagnose the failed linear compressor cost $109. The estimated cost of labor to fix the compressor was $805.80.

83.     Since Nicosia's Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely in late Summer 2022, Nicosia has been unable to use the Class Refrigerator for its intended purpose.

## IV.     INJURIES AND RISK OF IMMINENT HARM TO PLAINTIFFS

84.     Plaintiffs and the other Class Members purchased their Class Refrigerators solely for their personal, residential purposes and only used the Class Refrigerators as intended.

85.     The Class Refrigerators are defective because they contain defective linear compressors, which fail and cause the Class Refrigerator to run above the temperature required to store food and other consumable goods safely.

86.     In light of this defect, Plaintiffs and other Class Members paid far more than the reasonable value of the Class Refrigerators, and would not have paid such had the defect described above been disclosed by Transformco.

87.     Plaintiffs also lost valuable food as a result of the premature failure of their Class Refrigerators.

88.     Transformco has profited and continues to profit from the sale of defective Class Refrigerators by failing to disclose the above described defect and continuing to sell and distribute the Class Refrigerators at prices well above their reasonable value.

89.     As a direct and proximate result of Transformco's and its predecessor's false warranties, misrepresentations, and failure to disclose the defect inherent in these Class Refrigerators, Plaintiffs and the proposed Classes have purchased the Class Refrigerators and have suffered injury as a result.

90.     As a direct and proximate result of Transformco's concealment of the defect, its failure to warn its customers of the defect and the safety risks posed by the Class Refrigerators, and its failure to remove the defective Class Refrigerators from consumers' homes or otherwise remedy the defect, Plaintiffs and Class Members purchased the defective and unsafe Class Refrigerators and in many cases use them in their homes to this day.

91.     Had Plaintiffs and Class Members known of this serious safety risk, they would not have purchased the Class Refrigerators, would have paid substantially less for their Class Refrigerators than they paid, and/or would have removed them from their homes before their linear compressors failed.

## **CLASS ALLEGATIONS**

92.     Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) and for their warranty claims under the Magnusson-Moss Warranty Act, Plaintiffs bring this action on behalf

of themselves and all other persons similarly situated. In particular, they seek to represent the following class:

> **Nationwide Class:** All residents of the United States and its territories who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within ten years from the date of the filing of this lawsuit.

In the alternative, Plaintiffs propose the following State Warranty Sub-Classes:

> **New Jersey and Substantially Similar States Class**: All residents of New Jersey and any state with material similar implied warranty laws who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within ten years from the date of the filing of this lawsuit.

> **North Carolina and Substantially Similar States Class**: All residents of New Jersey and any state with material similar implied warranty laws who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within ten years from the date of the filing of this lawsuit.

> **California and Substantially Similar States Class**: All residents of California and any state with material similar implied warranty laws who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within ten years from the date of the filing of this lawsuit.

> **Texas and Substantially Similar States Class**: All residents of Texas and any state with material similar implied warranty laws who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within ten years from the date of the filing of this lawsuit.

Excluded from the above Nationwide Class and State Sub-Classes are: Transformco, its officers, directors, and employees, and entities in which Transformco has a controlling interest or which have a controlling interest in Transformco, and those entities' officers, directors, and employees; the judge assigned to this case and his or her immediate family; all expert witnesses in this case; and, all persons who make a timely election to be excluded from the Class.

## I.    <u>PLAINTIFFS MEET THE PREREQUISITES OF RULE 23(a)</u>

93.    <u>Numerosity</u>. Upon information and belief, the proposed Class includes many thousands of individuals, and, thus, is so numerous that joinder of all members would be

impracticable. Transformco and its corporate predecessor have issued warranties for millions of Class Refrigerators, and since February 11, 2019, Transformco has assumed the warranty obligations for the Class Refrigerators sold before that date.

94.     <u>Commonality.</u> The answers to questions common to the Class will drive the resolution of this litigation. Specifically, resolution of this case will be driven by questions relating to the Class Refrigerators' common design, whether the design is defective, whether the defective design poses a safety risk, Transformco's knowledge of the defect, the uniform diminution in value of the Class Refrigerators, and the corresponding unjust enrichment to Transformco. The common questions of law and fact include, but are not limited to, the following:

a.      whether the Class Refrigerators pose unreasonable safety risks to consumers;

b.      whether Transformco knew, or should have known, that the products they sold into the stream of commerce pose unreasonable safety risks to consumers;

c.      whether Transformco concealed the safety risks their Class Refrigerators pose to consumers;

d.      whether the safety risks the Class Refrigerators pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

e.      whether the Class Refrigerators possess a material defect;

f.      whether Transformco knew or should have known of the inherent defect in the Class Refrigerators when they placed them into the stream of commerce;

g.      whether Transformco concealed the defect from consumers;

h.      whether the existence of the defect is a material fact that reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

i.      whether the Class Refrigerators are merchantable; and

j.      whether any false warranties and material omissions by Transformco concerning their defective Class Refrigerators caused Class Members' injuries.

95.     Typicality. Plaintiffs have the same interests as all members of the classes he seeks to represent, and all of Plaintiffs' claims arise out of the same set of facts and conduct as all other members of the classes. Plaintiffs and all Class Members own or owned a Class Refrigerator that contains a linear compressor with a uniform defect that causes the Class Refrigerators to fail within their expected useful lives. All of the claims of Plaintiffs and Class Members arise out of Transformco's placement of a product into the marketplace they knew was defective and posed safety risks to consumers, and from Transformco's failure to disclose the known safety risks and defect. Also common to Plaintiffs and Class Members' claims are

a.      Plaintiffs' and Class Members' purchase of the defective Class Refrigerators;

b.      Transformco's conduct in 1) marketing, advertising, distributing, warranting, selling, and servicing the defective Class Refrigerators; and 2) concealing the defect in the Class Refrigerators.

96.     Adequacy. Plaintiffs will fairly and adequately represent and protect the interest of the Class Members: Plaintiffs' interests align with those of the Class Members, and Plaintiffs have no fundamental conflicts with the Class. Plaintiffs have retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the Class.

## II.  PLAINTIFFS MEET THE PREREQUISITES OF RULE 23(b)(3) AND RULE 23(c)(4).

97.  _Predominance and Superiority._ The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class. A class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. Transformco acted in a uniform manner with respect to the Plaintiffs and Class Members.

98.  Transformco is a sophisticated party with substantial resources, while Class Members are not, and prosecution of this litigation is likely to be expensive. Because the economic damages suffered by any individual Class Member may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Class Members to seek redress individually for Transformco's wrongful conduct as alleged herein.

99.  The concealed safety risks described above counsel in favor of swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

100.  Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Transformco's unlawful and wrongful conduct. Absent a class action, Class Members will continue to suffer the undisclosed risk of linear compressor failure and incur monetary damages, and Transformco's misconduct will continue without remedy. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

101.  There will be no undue difficulty in the management of this litigation as a class action.

102.    Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all class members and materially advance the litigation.

### III.    THE PROPOSED CLASS IS ASCERTAINABLE.

103.    The Classes are defined by reference to objective criteria and there is an administratively feasible mechanism to determine who fits within the Classes. The Classes consists of purchasers and owners of Class Refrigerators, and class membership can be determined using receipts, photographs, ownership documentation, and records in Transformco's and other databases.

**FIRST CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**810 ILCS 5/2-314**
**15 U.S.C. §§ 2301–2312**

104.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

105.    Plaintiffs bring this action on behalf of themselves and the Proposed Nationwide Class against Transformco.

106.    Illinois law applies to all members of the Proposed Nationwide Class under Illinois' choice of law principals, both because Illinois has the most significant relationship to all claims and because Illinois implied warranty law is not materially different from the implied warranty law in other states with respect to the claims at issue in this case.

107.    Transformco was at all relevant times a "merchant" with respect to the Class Refrigerators under Illinois' commercial code.

108.    The Class Refrigerators were at all relevant times "goods" within the meaning of Illinois' commercial code.

109.     The Class Refrigerators are "consumer products," as that term is defined by 15 U.S.C. §2301(1).

110.     Plaintiffs and Proposed Nationwide Class Members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

111.     Transformco is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

112.     Transformco provided Plaintiffs and Proposed Nationwide Class Members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

113.     In their capacity as warrantors and by the conduct described herein, any attempt by Transformco or its predecessor to limit the implied warranties in a manner that would exclude coverage of the defective Refrigerators is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Refrigerators is void.

114.     All jurisdictional prerequisites have been satisfied herein.

115.     The Defect is a result of the Refrigerators' design and is not the product of any manufacturing flaw or alteration in the Refrigerators after they were manufactured. In other words, the Defect existed at the point of design, manufacture, distribution, and sale.

116.     A warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which Refrigerators are used is implied by law pursuant to 810 ILCS 5/2-314. This implied warranty of merchantability is part of the basis for the bargain between Transformco (including as the assignee of Sears' liabilities), on the one hand, and Plaintiffs and Proposed Class Members, on the other.

117.     Notwithstanding the aforementioned duty, at the time of delivery, Transformco breached the implied warranty of merchantability because the Refrigerators are not fit for the

ordinary purposes for which such goods are used and failed to conform to the standard performance of like products used in the trade. This is so for the reasons stated above, including that the Refrigerators do not consistently maintain an appropriate temperature when operated as Transformco instructed and intended at the time Plaintiffs and Proposed Nationwide Class Members purchased the Refrigerators, for the industry standard lifetime of at least ten years.

118.    Transformco knew or should have known that the Refrigerators posed a safety risk and were defective as designed and knew or should have known that selling the Refrigerators to Plaintiffs and Proposed Nationwide Class Members as marketed constituted a breach of the implied warranty of merchantability.

119.    As a direct and proximate result of Transformco's breach of the implied warranty of merchantability, Plaintiffs and Proposed Class Members bought the Refrigerators without knowledge of the Defect or its serious safety risks.

120.    As a direct and proximate result of Transformco's breach of the implied warranty of merchantability, Plaintiffs and Proposed Class Members purchased unsafe products which could not be used for their intended purpose of safely storing food in a residential setting.

121.    As a direct and proximate result of Transformco's breach of the implied warranty of merchantability, Plaintiffs and Proposed Class Members have suffered damages and did not receive the benefit of their bargain.

122.    Transformco's breach of implied warranties violates the provisions of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

123.    Transformco's breaches of the implied warranty of merchantability damaged Plaintiffs and the Proposed Nationwide Class in an amount to be proven at trial. Among other things, the market price of the product that Plaintiffs and the Proposed Nationwide Class

Members actually paid for (i.e., machines that could be used safely to store food) is higher than the market price of the product that Transformco provided (i.e., machines that cannot maintain an appropriate temperature). Additionally, Plaintiffs and Proposed Class Members are entitled to revoke their acceptance of the Refrigerators, obtain damages and equitable relief, and obtain attorney's fees and costs pursuant to 15 U.S.C. § 2310.

124.     Plaintiffs and Proposed Class Members are also entitled to damages under 810 ILCS 5/2-714.

**SECOND CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 Ill. Comp. Stat. 505/1, *et seq.***

125.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

126.     Plaintiffs and Class Members are persons under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*

127.     Transformco's and its predecessor's acts and practices complained of herein were performed in the course of Tranformco's trade or business and thus occurred in or affected "commerce," as defined by the Illinois Consumer Fraud and Deceptive Business Practices Act.

128.     The Illinois Uniform Deceptive Trade Practice Act makes unlawful "unfair or deceptive acts or practices[.]" The Illinois Uniform Deceptive Trade Practice Act provides a private right of action for any person injured by a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

129.     In the course of its business, Transformco and its predecessor violated the Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Refrigerators, as detailed above.

130.     Specifically, by misrepresenting the linear compressors contained in the Class Refrigerators as free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the defective linear compressor and/or the Class Refrigerators that used it, Transformco and its predecessor engaged in the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce.

131.     Plaintiffs and Class Members had no way of discerning that Transformco's representations were false and misleading and/or otherwise learning the facts that Transformco had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Transformco's deception on their own.

132.     Transformco had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Illinois Consumer Fraud and Deceptive Business Practices Act in the course of its business. Specifically, Transformco and its predecessor owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the linear compressor in the Class Refrigerators because it possessed exclusive knowledge, it intentionally concealed the defect from Plaintiffs and Class Members, and/or it made misrepresentations that were misleading because they were contradicted by withheld facts.

133.     Transformco's and its predecessor's violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public. Transformco's unlawful acts and practices complained of herein affect the public interest.

134.     Plaintiffs and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Transformco's and its predecessor's misrepresentations and concealment of and failure to disclose material information.

135. Pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiff and Class Members seek all just and proper remedies, including but not limited to treble damages, an order enjoining Transformco's deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### N.C. Gen. Stat. §§ 25-2-314; N.J. Stat. Ann. § 12A:2-314; Cal. Com. Code § 2314; Tex. Bus. & Com. Code § 2.314.
*Asserted in the alternative that Illinois law does not apply to class members nationwide*

136. Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

137. Transformco and its predecessor are and were at all relevant times a "merchant" with respect to the Class Refrigerators and "seller" of the Class Refrigerators. N.C. Gen. Stat. §§ 25-2-103(1)(d); N.J. Stat. Ann. §§ 12A:2-103(1)(d), 12A:2-104(1); Cal. Com. Code §§ 2103(d), 2104(1); Tex. Bus. & Com. Code §§ 2.103(a)(4), 2.104(1).

138. Plaintiffs and Class Members who purchased Class Refrigerators are "buyers" within the meaning of N.C. Gen. Stat. § 25-2-103(1)(a); N.J. Stat. Ann. § 12A:2-103(1)(a); Cal. Com. Code §§ 2103(a); Tex. Bus. & Com. Code § 2.103(a).

139. The Class Refrigerators are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. § 25-2-105(1); N.J. Stat. Ann. §§ 12A:2-105(1) and 12A:2-103(1)(h); Cal. Com. Code § 2105(1); Tex. Bus. & Com. Code §§ 2.103(a)(1).

140. A warranty that the Class Refrigerators were in merchantable condition and fit for the ordinary purpose for which refrigerators are used is implied by law pursuant to N.C. Gen. Stat. §§ 25-2-314; N.J. Stat. Ann. §§ 12A:2-314; Cal. Com. Code § 2314; Tex. Bus. & Com. Code § 2.314.

141.    The Class Refrigerators did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used (safely storing food in a residential setting). Specifically, the Class Refrigerators are defective because they contain defective linear compressors which fail and cause the Refrigerators to run above the temperature required to store food safely.

142.    As a direct and proximate result of Transformco's and its predecessor's breach of the implied warranty of merchantability, Plaintiffs and Sub-Class Members have been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT
### N.C. Gen. Stat. § 75-1.1, *et seq.*
*Asserted in the alternative that Illinois law does not apply to class members nationwide*

143.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

144.    Plaintiff Nicosia brings this action on behalf of himself and the Proposed North Carolina Class against Transformco.

145.    Plaintiff Nicosia and Sub-Class Members are persons under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("NCUDTPA").

146.    Transformco's acts and practices complained of herein were performed in the course of Tranformco's trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

147.    The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The

NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

148.    In the course of its business, Transformco and it predecessor violated the NCUDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Refrigerators, as detailed above.

149.    Specifically, by misrepresenting the Class Refrigerators as free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Refrigerators, Transformco and its predecessor engaged in the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by N.C. Gen § 75-16.

150.    Transformco's and its predecessor's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff Nicosia and Sub-Class Members, about the reliability and true value of the Class Refrigerators.

151.    Transformco's and its predecessor's scheme and concealment of the defective linear compressor in the Class Refrigerators were material to Plaintiffs and Sub-Class Members, as Transformco intended. Had they known the truth, Plaintiff Nicosia and Sub-Class Members would not have purchased the Class Refrigerators, or would have paid significantly less for them.

152.    Plaintiff and Class Members had no way of discerning that Transformco's representations were false and misleading and/or otherwise learning the facts that Transformco

had concealed or failed to disclose. Plaintiff and Class Members did not, and could not, unravel Transformco's deception on their own.

153.     Transformco and its predecessor had an ongoing duty to Plaintiff Nicosia and Sub-Class Members to refrain from unfair or deceptive practices under the NCUDTPA in the course of its business. Specifically, Transformco and its predecessor's owed Plaintiff Nicosia and Sub-Class Members a duty to disclose all the material facts concerning the Class Refrigerators because it possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff Nicosia and Sub-Class Members, and/or it made misrepresentations that were misleading because they were contradicted by withheld facts.

154.     Transformco's and its predecessor's violations present a continuing risk to Plaintiff and Class Members, as well as to the general public. Transformco's and its predecessor's unlawful acts and practices complained of herein affect the public interest.

155.     Plaintiff Nicosia and Sub-Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Transformco's misrepresentations and concealment of and failure to disclose material information.

156.     Pursuant to N.C. Gen. Stat. § 75-16, Plaintiff Nicosia and Sub-Class Members seek all just and proper remedies, including but not limited to treble damages, an order enjoining Transformco's deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available.

## FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### N.J. Stat. Ann. § 56:8-1, *et seq.*
#### *Asserted in the alternative that Illinois law does not apply to class members nationwide*

157.     Plaintiff Latuja re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

158. Plaintiff Latuja brings this action on behalf of himself and the Proposed New Jersey Class against Transformco.

159. Plaintiff Latuja, Transformco, and the Proposed New Jersey Class Members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

160. The Class Refrigerators are "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

161. The New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1, et seq.) ("NJCFA") states, in relevant part: "[A]ny unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. . . ." N.J. Stat. Ann. § 56:8-2.

162. Transformco and its predecessor's were and are engaged in activity "in connection with the sale or advertisement" of "merchandise." Among other things, Transformco advertised, promoted, and distributed the Class Refrigerators.

163. Transformco and its predecessor's were and are engaged in activity "in connection with the sale or advertisement" of "merchandise." Among other things, Transformco and its predecessor distributed the Class Refrigerators to Plaintiff Latuja and Sub-Class Members.

164. Prior to Plaintiff Latuja and the Sub-Class Members' purchases of the Class Refrigerators, Transformco and its predecessor's engaged in deceptive practices that violated the NJCFA. As set forth in detail above, the Transformco and its predecessor's made statements and

omitted material information that had and continues to have the capacity to deceive the public and caused injury to Plaintiff Latuja and Sub-Class Members because:

  a. Transformco and its predecessor's made uniform representations that the Class Refrigerators had characteristics, uses, or benefits that they do not and did not have.

  b. Transformco and its predecessor's failed to disclose the true characteristics, uses, and benefits of the Class Refrigerators.

  c. Transformco and its predecessor's made uniform representations that the Class Refrigerators were of a particular standard, quality, and grade when they were and are not.

  d. Transformco and its predecessor's failed to disclose the true standard, quality, and grade of the Class Refrigerators.

  e. Transformco and its predecessor's advertised the Class Refrigerators with the intent not to sell them as advertised.

  f. Transformco and its predecessor's made uniform representations that the Class Refrigerators would perform as represented when they did not.

  g. Transformco and its predecessor's failed to disclose the true performance of its Class Refrigerators.

165. Plaintiff Latuja and Sub-Class Members reasonably expected that the Class Refrigerators would store food, drink, medicine, and other household goods at a safe temperature and would not pose a risk of failure, both before and at the time of purchase, reasonably expected that the Class Refrigerators would perform as represented by Transformco and its predecessor's in its promotional materials, service manuals, and owner's manual. These representations and affirmations of fact made by Transformco and its predecessor, and the facts it concealed or failed

to disclose, are material facts that were likely to deceive reasonable consumers, and that reasonable consumers would, and did, rely on in deciding whether to purchase a refrigerator. Moreover, Transformco and its predecessor intended for consumers, including Plaintiff Latuja and Sub-Class Members, to rely on these material facts.

166.    Transformco and its predecessor had exclusive knowledge that the Class Refrigerators had and have the Defect set forth above, which gave rise to a duty to disclose these facts to Plaintiff Latujua and Sub-Class Members. Specifically, Transformco and its predecessor owed Plaintiff Latuja and Sub-Class Members a duty to disclose all the material facts concerning the Class Refrigerators because they possessed exclusive knowledge about the Class Refrigerators, intentionally concealed that knowledge from Plaintiff Latuja and Sub-Class Members, and made misrepresentations that were rendered misleading because they were contradicted by withheld facts. Transformco also had an ongoing duty to Plaintiff Latuja and Sub-Class Members to refrain from deceptive practices under the NJCFA in the course of their business. Transformco and its predecessor breached these duties by making misrepresentations and failing to disclose material facts.

167.    Plaintiff Latuja and Sub-Class Members had no way of discerning that Transformco's representations were false and misleading prior to purchasing the Refrigerators, or otherwise learning the facts that Transformco and its predecessor had concealed or failed to disclose prior to purchasing the Class Refrigerators. Plaintiff Latujua and Sub-Class Members did not, and could not, unravel Transformco's deception on their own.

168.    Had Transformco and Sub-Class Members known about the design Defect and accompanying safety risks, or that the Class Refrigerators did not operate as advertised, they would not have purchased the Class Refrigerators or would have paid less than they did for them.

169.     As a direct and proximate result of Transformco's and its predecessor's misrepresentations, concealment, and failure to disclose material information, Plaintiff Latujua and Sub-Class Members have suffered ascertainable loss and actual damages. Among other things, the market price of the Class Refrigerators would have been lower had consumers known about the Defect.

170.     Transformco's violations present a continuing risk to Plaintiff Latuja and Sub-Class Members, as well as to the general public. Transformco's unlawful acts and practices complained of herein affect the public interest.

171.     As explained in more detail below, Transformco's and its predecessor's conduct was reprehensible.

        a.       Transformco and its predecessor have shown indifference to, and reckless disregard for, the health and safety of Plaintiff Latuja and the Proposed New Jersey Class Members because Transformco and its predecessor knew that their Class Refrigerators could fail to maintain an appropriately cold temperature when used as intended, but has done nothing to protect consumers.

        b.       Plaintiff Latuja and Sub-Class Members are financially vulnerable when compared to Transformco.

        c.       Transformco's and its predecessor's conduct was not isolated because this case involves many thousands of Class Refrigerators.

        d.       Transformco's and its predecessor's conduct was intentional. Rather than replacing or repairing the Class Refrigerators, Transformco and its predecessor had denied any problem at all. But Transformco continues to intentionally expose Plaintiff

Latuja and the Sub-Class Members to risk of physical harm because they have not fixed (or replaced) the Class Refrigerators.

172.     Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiff Latuja and Sub-Class Members seek an order enjoining Transformco's violations of the NJCFA and awarding damages, attorney's fees, and any other just and proper relief available under the NJCFA. Plaintiff Latuja and Sub-Class also seek punitive and treble damages against Transformco under N.J. Stat. Ann. § 56:8-19.

173.     Plaintiff will mail this complaint to the Attorney General within 10 days of filing, pursuant to N.J. Stat. Ann. § 56:8-2.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF SONG BEVERLY CONSUMER WARRANTY ACT, BREACH OF**
**IMPLIED WARRANTY**
**Cal. Civ. Code § 1790,** *et seq.*
*Asserted in the alternative that Illinois law does not apply to class members nationwide*

174.     Plaintiff Hatchett re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

175.     Plaintiff Hatchett brings this action on behalf of herself and the Proposed California Sub-Class against Transformco.

176.     The Class Refrigerators are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

177.     Transformco and its predecessor are manufacturers within the meaning of Cal. Civ. Code § 1791(j).

178.     Plaintiff Hatchett and California Sub-Class members are "buyers" within the meaning of Cal. Civ. Code. § 1791(b).

179.     By operation of law, every Class Refrigerator sold within California included an implied warranty that the goods are merchantable. Cal. Civ. Code. § 1792.

180.    The Defect is latent and was present at the time of the sale, and therefore the Class Refrigerators were not merchantable at the time of the sale. Transformco and its predecessor therefore breached these implied warranties by selling Class Refrigerators that were not fit for ordinary use and that were not of merchantable quality.

181.    Had Plaintiff Hatchett and the California Sub-Class members known about the Defect at the time of sale, they would not have bought the Class Refrigerators, or they would have purchased the Class Refrigerators at a lower price.

182.    As a direct and proximate result of Transformco's and its predecessor's breach of its implied warranties, Plaintiff Hatchett and the California Sub-Class members have been damaged in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**Cal Bus. & Prof. Code § 1750,** *et seq.*
*Asserted in that alternative Illinois law does not apply to class members nationwide*

183.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

184.    Plaintiff Hatchett brings this claim on behalf of herself and the California Sub-Class against Transformco.

185.    Plaintiff Hatchett and the California Sub-Class Members were deceived by Transformco's failure to disclose that the Class Refrigerators were defective and therefore not fit for the ordinary purpose for which refrigerators are used, namely storing food and other consumable goods at safe temperatures.

186.    Transformco and its predecessor engaged in unfair or deceptive acts or practices when, in the course of its business it, among other acts and practices, knowingly made materially incomplete representations as to the characteristics, uses and benefits of the Class Refrigerators.

187. In the various channels of information through which Transformco and its predecessor sold and marketed Class Refrigerators, Transformco and its predecessor failed to disclose material information concerning the Class Refrigerators, which it had a duty to disclose. Transformco had a duty to disclose the Defect because, as detailed above, (a) Transformco and its predecessor knew about the Defect; (b) Transformco and its predecessor had superior knowledge of material facts not known to the general public or the other California Class members; (c) Transformco and its predecessor actively concealed material facts concerning defective linear compressor from the general public and Plaintiff and California Class members; and (d) Transformco and its predecessor made partial representations about the Class Refrigerators that were misleading because they did not disclose the full truth. As detailed above, Transformco and its predecessor knew the information concerning the Defect at the time of advertising and selling the Class Refrigerators, all of which was intended to induce consumers to purchase the Class Refrigerators.

188. Transformco and its predecessor intended for Plaintiff Hatchett and California Class members to rely on it to provide adequately designed, and adequately manufactured Class Refrigerators and to honestly and accurately reveal the problems described throughout this Complaint.

189. Transformco and its predecessor intentionally failed or refused to disclose the Defect to consumers.

190. Transformco's and its predecessor's conduct and deceptive omissions were intended to induce Plaintiff Hatchett and California Sub-Class Members to believe that the Class Refrigerators were adequately designed and adequately manufactured refrigerators.

191.    Transformco's and its predecessor's conduct constitutes unfair acts or practices as defined by the California Consumers Legal Remedies Act (the "CLRA").

192.    Plaintiff Hatchett and the other California Sub-Class Members have suffered injury in fact and actual damages resulting from Transformco's material omissions.

193.    Plaintiff Hatchett and the California Sub-Class seek an order enjoining Transformco's unfair or deceptive acts or practices, equitable relief, and any other just and proper relief available under the CLRA. The claim for equitable relief is brought in the alternative should Plaintiff Hatchett not have an adequate remedy at law.

194.    Transformco is on notice of the issues raised in this count and this Complaint by way of numerous consumer complaints and several prior consumer lawsuits. Plaintiff Hatchett also submitted a warranty claim to Transformco alerting it to the failure of her Class Refrigerator. Because Transformco failed to remedy its unlawful conduct within the requisite time period, Plaintiff Hatchett seeks all damages and relief to which Plaintiff Hatchett and the California Sub-Class are entitled under the CLRA.

## EIGHTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
#### Cal Bus. & Prof. Code § 17200, *et seq.*
*Asserted only if Illinois law does not apply to California class members*

195.    Plaintiff Hatchett incorporates by reference all paragraphs as though fully set forth herein.

196.    Plaintiff Hatchett brings this claim on behalf of herself and the California Sub-Class against Transformco.

197.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." Transformco and its predecessor have engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

198.    Transformco's and its predecessor's conduct, as described herein, was and is fraudulent and in violation of the UCL. Transformco's and its predecessor's conduct violates the UCL in at least the following ways:

a.      by knowingly and intentionally concealing from Plaintiff Hatchett and California Sub-Class Members that the Class Refrigerators suffer from a Defect while obtaining money from the California Sub-Class Members; and

b.      by marketing Class Refrigerators as being functional and defect-free.

199.    Transformco's and its predecessor's misrepresentations and omissions alleged herein caused Plaintiff Hatchett and the California Sub-Class Members to make their purchases of their Class Refrigerators. Absent those misrepresentations and omissions, Plaintiff Hatchett and California Sub-Class Members would not have purchased the Class Refrigerators, would not have purchased the Class Refrigerators at the prices they paid, and/or would have purchased less expensive alternative refrigerators that did not contain defective linear compressors.

200.    Accordingly, Plaintiff Hatchett and California Sub-Class Members have suffered ascertainable loss and actual damages as a direct and proximate result of Transformco's and its predecessor's misrepresentations and their concealment of and failure to disclose material information.

201.    Plaintiff Hatchett requests that this Court enter such orders or judgments as may be necessary to enjoin Transformco from continuing its unfair, unlawful, and/or deceptive practices and to restore to members of the California Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief set forth below.

The claim for equitable relief is brought in the alternative should Plaintiff Hatchett not have an adequate remedy at law.

## NINTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### Cal Bus. & Prof. Code § 17500, *et seq.*
### *Asserted in the alternative tyhat Illinois law does not apply to class members nationwide*

202.     Plaintiff Hatchett incorporates by reference all allegations in this Complaint as though fully set forth herein.

203.     Plaintiff Hatchett brings this claim on behalf of herself and the California Sub-Class against Transformco.

204.     California Bus. & Prof. Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to  be made or disseminated . . . from this state before the public in any state, in any newspaper or   other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.**"**

205.     Transformco and its predecessor caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or  misleading, and which were known, or which by the exercise of reasonable care should have been  known to Transformco and its predecessor, to be untrue and misleading to consumers, including California Sub-Class Members.

206.    Transformco and its predecessor violated § 17500 because the misrepresentations and omissions  regarding the reliability and functionality of Class Refrigerators as set forth in this Complaint were material and likely to deceive a reasonable consumer.

207.    Plaintiff Hatchett and the other California Sub-Class Members have suffered an injury in fact, including  the loss of money or property, as a result of Transformco's and its predecessor's unfair, unlawful, and/or deceptive  practices. In purchasing their Class Refrigerators, the California Sub-Class  relied on the misrepresentations and/or omissions of Transformco and its predecessor with respect to the  performance and reliability of the Class Refrigerators. Transformco's and its predecessor's representations turned out not to be true because the Class Refrigerators are distributed with defective linear compressors, which fails and stops the Class Refrigerators from cooling to safe temperatures.

208.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the course of Transformco's business. Transformco's and its predecessor's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

209.    The California Sub-Class requests that this Court enter such orders or judgments as may be necessary to enjoin Transformco from continuing its unfair, unlawful, and/or deceptive practices and to restore to the California Class any money Transformco or its predecessor acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below. The claim for equitable relief is brought in the alternative should Plaintiff Hatchett not have an adequate remedy at law.

**<u>TENTH CAUSE OF ACTION</u>**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**

**Tex. Bus. & Com. Code § 17.41 *et seq.***
***Asserted only if Illinois law does not apply to Texas class members***

210.     Plaintiff Cristofoletti re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

211.     Plaintiff Cristofoletti brings this claim on behalf of himself and the Texas Sub-Class against Transformco.

212.     Plaintiff Cristofoletti and the Texas Sub-Class are individuals, partnerships or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), *see* Tex. Bus. & Com. Code § 17.41, and are therefore "consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4). Transformco and its predecessor are and were a "person" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

213.     Transformco and its predecessor engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tex. Bus. & Com. Code § 17.46(a).

214.     The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

215.     In the course of its business, Transformco and its predecessor concealed and suppressed material facts concerning the Class Refrigerators. Transformco and its predecessor accomplished this by deliberately not disclosing the fact that the Class Refrigerators were defective because they contained defective linear compressors that caused the Refrigerators to stop cooling.

216.    Plaintiff Cristofoletti and the Texas Sub-Class Members had no way of discerning that Transformco's and its predecessor's representations were false and misleading because Texas Class members did not have access to Transformco's and its predecessor's information about the Class Refrigerators and the defective linear compressors.

217.    Transformco and its predecessor thus violated the Act by, at minimum: representing that Class Refrigerators have characteristics, uses, benefits, and qualities which they do not have; representing that Class Refrigerators are of a particular standard, quality, and grade when they are not; advertising Class Refrigerators with the intent not to sell them as advertised; and representing that the subject of a transaction involving Class Refrigerators has been supplied in accordance with a previous representation when it has not.

218.    Transformco and its predecessor intentionally and knowingly misrepresented material facts regarding the Class Refrigerators with intent to mislead Plaintiff Cristofoletti and the Texas Sub-Class.

219.    Transformco and its predecessor knew or should have known that ITS conduct violated the Texas DTPA.

220.    Transformco and its predecessor owed Plaintiff Cristofoletti and the Texas Sub-Class a duty to disclose the illegality and public health risks, the true nature of the Class Refrigerators, because Transformco and its predecessor:

    a.    possessed exclusive knowledge that it was manufacturing, selling, and distributing defective Class Refrigerators throughout the United States;

    b.    intentionally concealed the foregoing from Texas Sub-Class Members; and/or

      c.     made incomplete representations about the Class Refrigerators' cooling capabilities while purposefully withholding material facts that contradicted these representations.

221.    Transformco's and its predecessor's concealment of the true characteristics of the Class Refrigerator's cooling capabilities were material to the Texas Class.

222.    Transformco's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Texas Sub-Class, about the true cooling capabilities of the Class Refrigerator, the quality of Transformco's and its predecessor's brands, and the true value of the Class Refrigerators.

223.    Transformco's and its predecessor's violations present a continuing risk to the Texas Sub-Class as well as to the general public. Transformco's and its predecessor's unlawful acts and practices complained of herein affect the public interest.

224.    Texas Sub-Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Transformco's and its predecessor's misrepresentations and concealment of and failure to disclose material information. Transformco and its predecessor's had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Texas DTPA. All owners of Class Refrigerators suffered ascertainable loss as a result of Transformco's and its predecessor's deceptive and unfair acts and practices made in the course of Transformco's and its predecessor's business.

225.    Pursuant to Tex. Bus. & Com. Code § 17.50, the Texas Sub-Class seeks an order enjoining Transformco's unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

226.     Pursuant to Tex. Bus. & Com. Code Ann. § 17.505, Plaintiff Cristofoletti previously gave notice to Sears of the problem with his Class Refrigerator by complaining to the Sears warranty department and demanding a replacement refrigerator. Additionally, Transformco was provided notice of the issues raised in this count and this Complaint by way of numerous consumer complaints and prior consumer lawsuits. The Texas Class seeks all damages and relief to which it is entitled.

\*   \*   \*

WHEREFORE, Plaintiffs individually and on behalf of the above defined Classes, by and through counsel, pray the Court grant the following relief:

A.  An Order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.  An Order appointing Plaintiffs as representatives for the Classes and appointing their counsel as lead counsel for the Classes;

C.  An order awarding Plaintiffs and all other Class Members damages in an amount to be determined at trial for the wrongful acts of Transformco and its predecessor described herein;

D.  Restitution as authorized by law;

E.  Payment of any economic, direct, actual, general, incidental, and consequential damages, in an amount to be proven at trial;

F.  Payment to the Classes of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

G.  Payment to the Classes of punitive damages, in an amount to be proven at trial;

H.  An order awarding attorney's fees pursuant to applicable State and common laws;

I.  Interest as provided by law, including but not limited to pre judgment and post-judgment interest as provided by rule or statute; and

J.  Any and all other and further relief as this Court deems just, equitable, or proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all counts so triable.

Dated: March 2, 2023                              Respectfully submitted,


By:  */s/ Jason L. Lichtman*
      Jason L. Lichtman (IL Bar No: 6290052)
      Jonathan D. Selbin
      Andrew Kaufman
      John T. Nicolaou (app. for admission forthcoming)
      Margaret J. Mattes (app. for admission forthcoming)
      **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
      250 Hudson Street, 8th Floor
      New York, New York 10013
      Telephone: 212.355.9500
      Email: jlichtman@lchb.com
           jselbin@lchb.com
           akaufman@lchb.com
           jnicolaou@lchb.com
           mmattes@lchb.com

      **TUSA P.C.**
      Joseph S. Tusa (app. for admission forthcoming)
      55000 Main Road, 2nd Floor
      P.O. Box 566
      Southold, NY  11971
      Tel. (631) 407-5100
      Fax. (516) 706-1373
      joseph.tusapc@gmail.com